IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01788-PAB-KLM

TBL COLLECTIBLES, INC., D/B/A COLORADO COINS, CARDS & COMICS,
a Colorado Corporation,

      Plaintiff,

v.

OWNERS INSURANCE CO., an Ohio Corporation,

      Defendant.

---

**PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERT, JOHN P. CRAVER, ESQ.**

---

Pursuant to Fed. R. Evid. 702 and 403, and D.C.COLO.LCivR 7.1, Plaintiff TBL Collectibles ("TBL") hereby moves to exclude certain opinions and testimony of John P. Craver ("Craver"), Esq., an expert retained by Defendant Owners Insurance Company ("Owners") on the subject of insurance claims handling practices. Undersigned counsel certifies that she has conferred with counsel for Defendant about the substance of this motion and is authorized to state that Defendant opposes the relief requested herein.

## I.    INTRODUCTION

This is an action for declaratory relief, breach of contract, and violation of C.R.S. § 10-3-1115, arising from Owners' unreasonable denial of benefits owed to TBL under an enforceable policy for commercial property insurance ("the Policy"). On March 23, 2017, Owners served its

Fed. R. Civ. P. 26(a)(2) Disclosures, naming Craver as a retained expert.  Ex. 1 (Expert Disclosure).  Craver is a civil litigator practicing in the area of personal injury and coverage, including motor vehicle, bad faith insurance, and professional liability.  Id. at CV.  The bulk of his Report is dedicated to reciting the law he deems applicable to this case and includes numerous irrelevant and/or conclusory opinions and misstatements of material fact.  For the reasons set forth herein, the majority of Craver's statements and opinions are inadmissible under Fed. R. Evid. 702 and 403, and should be excluded at trial.

## II.     RELEVANT BACKGROUND

On August 30, 2015, TBL experienced a burglary at its retail store in Arvada, Colorado.  Stolen from the store on that date was a floor safe containing $31,800.00 in cash and $81,317.00 in bullion and numismatic coins.  TBL submitted a timely claim for benefits owed under the Policy.  Owners determined the stolen cash and coins constituted a covered loss and promptly paid the policy limit on the cash.  Owners refused to pay any benefits owed on the coins, however, stating that TBL failed to provide sufficient documentation of the loss.

Under the terms of the Policy, the insured must, "at Owners' request, provide complete inventories of the damaged and undamaged property, including quantities, costs, values, and amount of loss claimed."  Ex. 2 (excerpt of the Policy at Duty No. 5).[1]  Jayme Larson ("Larson"), the Owners representative who handled and had final authority on TBL's claim, testified that she believed TBL had not complied with Duty No. 5, and this purported failure was the sole reason

---

[1] The Court will note the Policy does not define the term "inventory," which must therefore be given its plain and ordinary meaning.  See Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294, 299 (Colo. 2013).  "Inventory" is defined by as "an itemized list of current assets: such as (1) a catalog of the property of an individual or estate; (2) a list of goods on hand.  See www.merriam-webster.com/dictionary/inventory (last visited 4/12/17).

2

Owners denied TBL's claim. Ex. 3 (Responses to Written Discovery) at 11 (Rog. 6); Ex. 4 (Larson Deposition) at 22:19-23:3, 24:14-25:4, 93:11-95:1, 96:10-14, and 97:8-99:21.

Owners never requested TBL provide an inventory of its undamaged property. Ex. 4 at 133:18-24. With respect to the inventory of damaged property, TBL provided Owners a handwritten list of all items stolen, and the Arvada Police Department ("APD") provided Owners a copy of its Investigation Report. Ex. 5 (handwritten list); Ex. 6 (APD Report). Each of these documents includes an inventory of all coins stolen from the store by description, quantity, and value. See id. Furthermore, Owners' review of TBL's books and records established a pattern and practice on the part of TBL of purchasing the types of coins stolen in the burglary. Ex. 8 (Email from Larson to Gibson, dated 1/29/16); Ex. 9 (Letter from Larson to Bruce Wray, owner of TBL, dated 3/16/16); Ex. 10 (Email from Paul deBoer, forensic accountant, to Larson, dated 1/19/16). Larson agrees TBL provided an inventory of the stolen coins, but disputes that such inventory satisfies the terms of the Policy. Ex. 7 (Email from Larson to Don Gibson ("Gibson") at Home Office Claims, dated 9/25/15) at No. 4. See also Ex. 4 at 56:5-12 and 91:21-92:3

The issues that must be decided are: 1) whether TBL complied with its duty under the Policy to provide Owners a complete inventory of the stolen items; and, if so, 2) whether Owners breached the contract for insurance by denying TBL's claim for benefits even though TBL complied with all of its duties under the Policy; and 3) whether Owners' justification for denying benefits to TBL was unreasonable under the circumstances. Complaint, Dkt. 1, at ¶¶ 41-69

The first two issues concern questions of contract interpretation and are not addressed by Craver in his Report. That Report is instead limited to "comment[ing] on Owners Insurance's handling of this claim," Report at 1, and relate only to the third issue in this case: whether

Owners violated C.R.S. § 10-3-1115 by denying TBL's claim for commercial property benefits without a reasonable basis. In that regard, Craver offers a litany of legal observations and makes numerous conclusory and/or irrelevant opinions and factual misstatements. These observations, opinions, and statements – as described by category below – are inadmissible under Fed. R. Evid. 702 and 403 and should therefore be excluded from trial.

### III.    STANDARD OF REVIEW

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"The proponent of expert testimony bears the burden of showing that the expert's testimony is admissible." United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009). The Tenth Circuit Court of Appeals has described the burden as follows:

> Under Rule 702, the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)].
>
> Reliability questions may concern the expert's data, method, or his application of the method to the data. The party offering the expert must show that the method employed by the expert…is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements… In making a reliability determination, generally, the district court should focus on an expert's methodology rather than the conclusions it generates.

Id. (internal quotes and citations omitted).

Although Daubert concerned experts offering scientific testimony, the court's gatekeeping function to ensure that expert testimony is both relevant and reliable extends to all expert testimony.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).  And while Daubert instructs that the court's focus should be on the expert's methodology rather than the conclusions it generates:

> conclusions and methodology are not entirely distinct from one another… [N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

This Court has acknowledged that the Tenth Circuit has "a special rule with respect to lawyers serving as expert witnesses."  Baumann v. Am. Fam. Mut. Ins. Co., 836 F.Supp.2d 1196, 1200 (D. Colo.) (citing Specht v. Jensen, 853 F.2d 805, 808-809 (10th Cir. 1988)).

> While other experts may aid a jury by rendering opinions on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury. When an attorney is allowed to usurp that function, harm is manifest in at least two ways. First…, the jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title "expert," is more knowledgeable than the judge in a given area of the law…
>
> Second, testimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process.
>
> \*     \*     \*
>
> [A]n expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of the testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case.

Specht, at 808-809.

5

IV.   **ARGUMENT**

   A.   **Craver Should be Precluded from Opining on Applicable Law**

Pursuant to C.R.S. § 10-3-1115(1)(a), "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  An insurer has acted unreasonably "if [it] delayed or denied authorizing payment of a covered benefit without a reasonable basis." Id. § 10-3-1115(2).  "[T]he reasonableness of an insurer's conduct must be determined objectively based on industry standards." Leeper v. Allstate Fire & Cas. Ins. Co., 2016 U.S. Dist. LEXIS 36104, *16-17 (D. Colo.) (citing Am. Fam. Mut. Ins. Co. v. Allen, 102 P.3d 333, 342 (Colo. 2004)).  As applicable to this case, Larson has testified that an insurer cannot require its insured to do something over and above what is required in the contract, and that it would be unreasonable for an insurer to require more of its insured than the Policy requires.  Ex. 4 at 14:21-16:24 and 17:13-17.

Craver ignores this testimony on the part of Larson, offers no opinion on relevant industry standards, and goes to great length to articulate the law *he* feels should govern and/or apply to this case.  Those statements are as follows: 1) in order for the insured to prove Owners violated the statutory bad faith standard, he must establish by a preponderance of the evidence that Owners' conduct was unreasonable and that they denied the claim without a reasonable basis; 2) the insurer's conduct in the denial of benefits to an insured must be evaluated based on the information before the insurer at the time of its decisions; 3) an insurer is not required to concede to every demand by its insured; 4) the insurer has the right to protect its own interests, along with those of its other insureds and policyholders; 5) first-party actions do not involve fiduciary relationships or quasi-fiduciary relationships; 6) the interest of the insurer and the

6

insured run parallel, neither being superior; 7) insurers must be accorded wide latitude to investigate first party claims and resist false or unfounded efforts to obtain funds for which there is not coverage under the policy; 8) a mistaken belief about coverage does not constitute bad faith unless the insured can prove that the insurer denied the claim without a reasonable basis; 9) the insured must prove there was "an absence of a reasonable basis"; 10) if the insurer has a reasonable basis for its position, it is not guilty of a statutory violation; 11) the concept of "absence of a reasonable basis" is a similar concept to the proof required for attorney's fees awards under C.R.S. § 13-17-101; 12) attorney's fees under C.R.S. § 13-17-101 are awarded if the claim is frivolous, groundless or lacking a rational basis; 13) the "frivolous, groundless, or lacking a rational basis" standard must be applied in determining whether the commencement or maintenance of legal proceedings is unreasonable for purposes of a bad faith claim; 14) the Unfair Claims Practices Act requires that the conduct of the insurer be willful or a regular business practice; 15) willful means an act or omission purposely committed by an insurer who must have realized that the conduct was dangerous and conduct which is done heedlessly and recklessly either without regard to the consequences or without regard to the rights and safety of others; 16) Division of Insurance amended regulation 5-1-14 ("Regulation 5-1-14") provides guidance to insurers on when they have a duty to pay first party claims in the State of Colorado; 17) Regulation 5-1-14 provides an insurer should pay a first party claim within 60 days after a valid and complete claim has been received unless there is a reasonable dispute between the parties concerning such claim; 18) Regulation 5-1-14 defines a valid and complete claim; Regulation 5-1-14 defines a reasonable dispute; and 19) the Colorado legislature, through C.R.S. § 10-1-128, makes it clear there is a strong public policy that the state is critically interested in

investigating an stopping insurance fraud.  Report at 2 and 4.

Some of these pronouncements of law are correct, complete, and pertinent to Plaintiff's Third Claim for Relief under the facts of this case; others are not.  But even assuming, arguendo, that each of these statements were correct, complete, and relevant, it is within the province of the Court to instruct the jury on the law applicable to this case, and any testimony from Craver as to what law applies is impermissible.  See Specht, 853 F.2d at 810 (expert testimony is not proper "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based").  For this reason, Plaintiff requests the Court enter an Order precluding Craver from offering any of the opinions or statements of law set forth in this section as impermissible under Fed. R. Evid. 702.

### B. Craver Should be Precluded from Opining on Irrelevant Issues

Pursuant to Fed. R. Evid. 702 as interpreted by Daubert, admissible expert evidence must be both relevant and reliable.  See Nacchio, 555 F.3d at 1241.  In order for Craver's testimony to be relevant, it must have some tendency to make a fact more or less probable than it would be without the evidence, and that fact must be of consequence in determining this action.  Fed. R. Evid. 401.  In his Report, Craver discusses four subject matters having no bearing whatsoever on whether Owners' acted reasonably in denying the claim based on TBL's purported non-compliance with Duty No. 5.  Mr. Craver must be precluded from testifying as to these matters.

#### 1. The Legislative Declaration at C.R.S. § 13-17-101 is Irrelevant

As stated at p. 7, infra, the Craver Report includes several references to C.R.S. § 13-17-101 (legislative declaration on frivolous, groundless, or vexatious actions).  These statements have nothing to do with Plaintiff's Third Claim for Relief.  Pursuant to C.R.S. § 10-3-1115,

Owners' denial of TBL's claim is unreasonable if it lacks a reasonable basis.  Plaintiff's only burden is thus to demonstrate that Owners' denial was unreasonable under the circumstances.  See Kisselman v. Am Fam. Mut. Ins. Co., 292 P.3d 964, 973 (Colo. 2011).  Any testimony suggesting that Plaintiff faces a heightened burden is not only irrelevant, but likely to confuse the issues, mislead the jury and, waste time.  See Fed. R. Evid. 702 and 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by danger of…confusing the issues, misleading the jury...[or] wasting time.").

### 2.    *Colorado Division of Insurance Regulations Are Irrelevant*

In addition to the four statements concerning Regulation 5-1-14 set forth at p. 7, infra, the Craver Report states: 1) in reviewing Regulation 5-1-14, it does not appear that there is a valid and complete claim that Owners owes at this time; 2) Regulation 5-1-14 would indicate that Owners had a reasonable basis for not paying for the collectible coins; and 3) the handling of the claim complied with Regulation 5-1-4.  Report at 4-5.  Reliance on this regulation is misplaced.

> [A]lthough administrative regulations may be used as valid…evidence of industry standards," Am. Family Mut. Ins. Co. v. Allen, 102 P.3d 333, 344 (Colo. 2004), when a statute defines a standard of reasonableness, as it does here, an administrative regulation may not modify or contradict that standard, McCool v. Sears, 186 P.3d 147, 151 (Colo. App. 2008).

Fisher v. State Farm Mut. Auto. Ins. Co., 2015 COA 57 at ¶¶ 31-34 (Colo. App. May 7, 2015).

This finding was echoed more recently by the Tenth Circuit Court of Appeals, which held that the Colorado Division of Insurance regulations:

> only provide minimum standards to avoid penalties.  Although an insurer may act unreasonably if it violates the regulation, it does not follow an insurer acts reasonably if it meets the regulations' minimum standard.

Etherton v. Owners Ins. Co., 829 F.3d 1209, 1228, n. 7 (10th Cir. 2016).

Under the holdings of these cases, Craver should be precluded from telling the jury that Regulation 5-1-14 sets the standard of care in this case, that Owners complied with that standard of care, and/or that Owners' handling and denial of TBL's claim was reasonable because Owners complied with Regulation 5-1-14. That regulation is irrelevant to Plaintiff's Third Claim for Relief, and Craver's testimony on this or any other Division of Insurance regulation will likely confuse the issues, mislead the jury, and waste time. See Fed. R. Evid. 702; Fed. R. Evid. 403.

### 3. *Opinions of Prompt Claim Handling Are Irrelevant*

When Plaintiff filed its Complaint on July 13, 2016, it was unclear whether Owners had denied TBL's claim or whether that claim remained open. Thus, Plaintiff styled its Third Claim for Relief inclusively, to challenge Owners' "delay in payment of benefits owed and/or denial of TBL's personal property claim without a reasonable basis." Dkt. 1 at ¶ 67.

On March 10, 2017, Larsen clarified that Owners denied TBL's claim on March 16, 2016. Ex. 4 at 135:10-13. For this reason, Plaintiff's claim is that Owners unreasonably denied payment of TBL's claim without a reasonable basis. As set forth in the Complaint, Plaintiff has alleged, and continues to allege, that the denial was unreasonable because TBL – despite Owners' arguments to the contrary – complied with all of its duties under the Policy. Dkt 1 at ¶¶ 41-69. At no time has Plaintiff alleged that Owners violated C.R.S. § 10-3-1115 because it did not timely investigate or evaluate its claim for benefits related to the stolen coins.

Despite the fact that Plaintiff's claims are not rooted in a theory of unreasonable delay, the Craver Report includes the following statements and opinions: 1) there were no substantial delays in the adjustment of the claim; 2) the timing of the inspections, interviews of the insured, requests for records to support the claim, and the adjustment of the claim was prompt and

proactive; 3) Owners investigated coverage promptly; 4) the policy benefits that have been determined owed have been paid in a timely manner; 5) the payment for repairs and the cash loss was prompt; and 6) Owners acted promptly in handling this claim.  Report at 4-5.

The basis upon which Owners denied TBL's claim is that TBL failed to provide sufficient documentation to support the ownership of the coins claimed.  Because Craver's statements and opinions about Owners' prompt investigation and payment of other portions of the loss do not tend to make it more or less probable that Owners' basis for denying the claim was justified, they are irrelevant and impermissible under Fed. R. Evid. 702.  Any testimony from Craver of this nature would be designed simply to paint Owners as a good actor, i.e., to show that Owners acted reasonably in other respects.  But whether Owners acted timely on this or other portions of the claim is beside the point.  Here, the jury will concern itself only with whether Owners was reasonable in denying the claim because TBL did not provide a complete inventory of stolen items.  Any opinions going to whether Owners engaged in unreasonable delay are irrelevant and a waste of time.  See Fed. R. Evid. 403.

### 4.     *Opinions on Insurance Fraud Are Irrelevant*

There is zero evidence in this case that Owners ever viewed TBL's claim with suspicion or felt that TBL's report of the stolen coins might be fraudulent.  Ex. 4 at 24:14-25:4.  Nevertheless, the Craver Report contains the following statements and opinions: 1) the Colorado legislature, through C.R.S. § 10-1-128, makes it clear that there is a strong public policy within the state wherein the state is critically interested in investigating an stopping insurance fraud; 2) the General Assembly has stated that insurance fraud is expensive and that it increases premiums and places businesses at risk; 3) insurance fraud reduces the consumer's ability to raise their

11

standard of living and increases the economic vitality of the state; and 4) a critical investigation into theft claims and the amount of the damages sustained is clearly authorized and in fact encouraged by the state's statutes and regulations.  Report at 4.

Craver should not be permitted to address in any manner the issue of insurance fraud at trial.  No suspicion or allegation of fraud exists in this case; yet, the danger of unfair prejudice is great.  "Unfair prejudice in the Rule 403 context means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, and emotional one." United States v. Irving, 665 F.3d 1184, 1213 (10th Cir. 2011) (internal quotes and citation omitted).  If the jury hears testimony from Craver – a professed expert in the field of insurance claims handling – that insurance fraud is on the rise and consumers must beware of this harmful and expensive phenomenon, some jurors are likely to become distracted and/or defensive, and may assume a suspicion of fraud in this case where none exists.  Denying a claim on the basis of insurance fraud is a legitimate exercise.  Inferring the existence of fraud in order to shield a claim denial is not.  Plaintiff urges the Court to bar Mr. Craver from testifying or opining on any matter concerning insurance fraud as contrary to Fed. R. Evid. 702 and 403.

**C.     Craver Should be Precluded from Advancing Conclusory Opinions**

"[E]xpert testimony that is connected to existing data only by a bare assertion resting on the authority of the expert" should be rejected." People v. Ramirez, 155 P.3d 371, 379 (Colo. 2007) (citing Joiner, 522 U.S. at 146).  That is because "Rule 702 requires that expert testimony be helpful to the trier of fact." Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991) (internal quotes and citations omitted).  "[C]onclusory opinions, which require blind

acceptance of the expert's ipse dixit, are never helpful." Huang v. Marklyn Group Inc., 2014 U.S. Dist. LEXIS 97861 at *5 (D. Colo. July 18, 2014).

The Craver Report contains the following statements and opinions, which are unsupported: 1) the claim handling complied with industry practices; 2) the insurer acted in compliance with the Unfair Claim Practices Act; 3) Owners has fully complied with the requirements of the Act; 4) the insurer's denial cannot fairly be considered willful; 5) businesses of this nature are required, by statute, to keep receipts and records of purchases of valuable commodities such as gold coins; 6) businesses are required for tax purposes to maintain an accurate inventory of the purchase date for items purchased, as well as the amount paid for the items purchased; and 7) a business is expected to have some proof of purchase or ownership of valuable inventory of this nature for numerous legal reasons.  Report at 5.

As stated previously, the Craver Report does not identify applicable industry standards, so the opinion that Owners' claim handling complied with industry standards is meaningless. Similarly, Craver's opinion that Owners acted in compliance with the Unfair Claim Practices Act is too vague to be considered substantive.  The only discussion included in the Report about the Act is a statement that violations must be "willful."  But Plaintiff has no claim that Owners acted willfully in violating C.R.S. § 10-3-1115, and that statute requires no such showing.  Craver should not be permitted to make a bald proclamation that Defendant complied with the Unfair Claim Practices Act, i.e., that Owners acted reasonably, without explaining which conduct complied with which provision of the Act and why.  To the extent such explanations shed no light on whether Owner's reliance on TBL's purported non-compliance with Duty No. 5 was reasonable, they should be excluded as irrelevant.

13

The final three statements concern the unsupported "fact" that business are required to keep better records than did TBL. These are inadmissible. There is no evidence that TBL was sanctioned by authorities for its record keeping practices or even investigated for the same. Craver's opinions concerning record keeping requirements for businesses are not couched in any specific law or regulation, are not helpful to the jury, and will just waste time. Plaintiff asks these statements and opinions be excluded under Fed. R. Evid. 702 and 403.

### D. Mr. Craver Cannot Make Erroneous Statements of Fact to the Jury

Several statements in the Craver Report are erroneous. They include the following: 1) no documentary or independent proof of ownership was submitted; 2) the only evidence submitted supporting ownership is the statement of the insured that he owned this property; 3) the insured failed to provide any proof of ownership other than his own statements; 4) the insured's "lack of proof" certainly supports a strong inference that he, in fact, did not own or purchase these coins; 5) in claims handling, there is no regulation, statute or formula to determine the adequacy of proof of ownership to substantiate the loss; and 6) there are reasonable disputes that exist and an insurer does not act unreasonably in seeking resolution through the courts. Report at 4-5.

Regarding statements one through four above, TBL provided to Owners as documentary proof of the loss a handwritten inventory, the APD Report, and hundreds of pages of books and records showing a pattern and practice of purchasing and selling the types of coins stolen on August 30, 2015. Any testimony from Craver stating or suggesting otherwise is disingenuous and designed to mislead the jury.

Regarding Craver's statement that there is no "regulation, statute or formula to determine the adequacy of proof of ownership to substantiate the loss," the plain language of the Policy sets

out the duties of the insured following a loss. It is undisputed here that such language governs the relative rights and responsibilities of the parties, and allowing Craver to suggest there is no standard governing what TBL must provide to the insurer would be misleading.

Finally, Craver's suggestion that Owners has acted reasonably "in seeking resolution [of the parties'] dispute through the courts" has no foundation in fact. First, Owners did not file this suit. Second, the parties are not in litigation because Owners sought a clarification of policy terms. The parties are in litigation because TBL has sued Owners for acting unreasonably. Any testimony of the nature suggested by Craver's statement should be excluded under Fed. R. Evid. 702 and 403 because it is inaccurate and thus unhelpful to the jury.

## V. CONCLUSION

For all the foregoing reasons, TBL respectfully requests the Court limit the testimony of John Craver, Esq. by excluding all statements and opinions challenged herein.

Respectfully submitted this 25th day of April 2017.

KEATING WAGNER POLIDORI FREE, P.C.

By: *s/ Melissa A. Hailey*
    W. Randolph Barnhart, CO Reg. #5186
    Melissa A. Hailey, CO Reg. #42836
    1290 Broadway, Suite 600
    Denver, CO 80203
    Tel: (303) 534-0401
    Fax: (303) 534-8333
    wrb@keatingwagner.com
    mah@keatingwagner.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

  I hereby certify that on April 25, 2017, I filed a true and correct copy of the foregoing document with the Clerk of Court through the CM/ECF system, which will provide electronic notice of the same to counsel of record for Defendant at the following address:

 Muliha A. Khan, Esq.
 Erica O. Payne, Esq.
 Zupkus & Angell, P.C.
 789 Sherman Street, Suite 500
 Denver, Colorado 80203
 (303) 894-8948
 mkhan@zalaw.com
 epayne@zalaw.com

                *s/ Melissa A. Hailey*